Dear Mr. Ingram:
You requested an opinion from this office as to whether the operation of the Christian Brotherhood Network falls within the definition of "insurance" as set forth in the Louisiana Insurance Code.
LSA-R.S. 22:5(1)(a) states:
 Insurance is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies.
Black's Law Dictionary defines a "contract" as an
 agreement between two or more persons which creates an obligation to do or not to do a particular thing. Its essentials are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation.
The Christian Brotherhood Network apparently consists of all subscribers to the Christian Brotherhood Newsletter ("CBN"). Eight requirements must be met to be a subscriber. They are:
1. One must be a Christian by Biblical principles;
 2. One must believe the Bible teaches sharing of other Christians' burdens;
3. One must attend church regularly;
 4. One must totally abstain from alcohol, tobacco, and illegal drugs;
 5. One must send the amount designated for all new subscribers to the home office;
 6. One must meet all requirements detailed in the "Brotherhood Guidelines" ("guidelines"); send to all needs assigned, and pay the annual subscription fee to be eligible to renew a subscription or submit a need;
 7. One must be current in all shares at the time of the incident to be eligible to submit a need for publication; and
 8. One must sign, send to the home office, and abide by a commitment form each year. The form includes a statement that the subscriber has not consumed any alcoholic beverages, used tobacco or illegal drugs in the preceding twelve months.
The guidelines clearly state: "This is not a contract, nor alegally binding agreement." The guidelines define the CBN as a publication which gives subscribers an opportunity to share other subscribers' medical expenses. According to the guidelines, the CBN "is not and should never be considered or referred to as aninsurance company or a substitute for hospitalizationinsurance."
It is a basic tenet of law that the label placed on a document is not determinative of its nature. Therefore, it is necessary to decipher the essence of the agreement between the CBN and its subscribers to determine whether the CBN is, in fact and under the law, operating as an insurance company. In making that determination, the following factors are considered:
• Does an agreement exist?
• Who are the parties to the agreement?
• What is the subject matter of the agreement?
• Is there legal consideration for the agreement?
• Is there mutuality of agreement?
• Is there mutuality of obligation?
The guidelines contain introductory language that the"following does not constitute a contract but merely describesthe types of needs that will be published for subscribers." A closing note provides that the "guidelines explain methods bywhich the Christian Brotherhood Newsletter subscribers will sharetheir needs in 1992." The guidelines consist of twenty (20) separate paragraphs ranging from "Assessment" to "Bills Subscribers Choose To Share" to "Death Benefit". The guidelines constitute the agreement between the parties.
The parties to the agreement are the subscribers and the home office. Although the guidelines do not define the term "home office", they do require subscribers to pay to the home office an annual subscription fee equal to their monthly share unit amounts.
This payment is not a gift, but a fee for services rendered. In exchange for this fee, the home office coordinates efforts to facilitate payment of needs or medical expenses by designated subscribers. It reminds tardy subscribers of unpaid "needs" and screens medical bills submitted for payment to determine if the bill qualifies for publication in the newsletter.
The subject matter of the agreement is the "sharing" of subscribers' medical expenses. The agreement addresses in some detail which medical expenses will be shared, which medical expenses the subscribers will pay themselves, and which "incidents" the subscribers choose to be "personally responsible for" paying. The guidelines also contain an arbitration clause.
Consideration is the inducement to a contract; legal consideration is one recognized or permitted by the law as valid. There is legal consideration to the agreement in this case. In exchange for a payment to the home office for services rendered and for "gifts" to other subscribers as set forth by the guidelines, a subscriber is entitled to submit medical bills to the CBN. All qualified medical bills will be published in the newsletter and assigned specific subscribers for payment. The inducement for the subscriber to enter into agreement with the CBN is the prospect of having qualified medical bills paid by other subscribers.
There is also mutuality of agreement between the subscribers and the home office. Both parties agree that an annual subscription fee must be paid to the home office. Both parties agree that the home office is then responsible for coordinating qualified subscribers so that each is assigned to share in paying another's qualified medical expenses.
There appears, however, to be no mutuality of obligation as to the subject matter of the agreement between the parties. In other words, the home office has no obligation under the agreement to pay the medical expenses or "needs" of the subscribers. Paragraph VIII(6) provides:
 The Christian Brotherhood Newsletter makes no promise to, or provision for paying any portion of your medical bill. Any help you get will come from other subscribers.
If the subscriber whose medical bill is published does not receive payment from a subscriber designated by the CBN to pay, then a new subscriber is assigned to send payment in his/her place. It is not clear how payment will be made if there are insufficient new subscribers to take the place of the non-paying subscriber(s). However, it is clear that the CBN has no obligation to remit payment to the subscribers with qualified medical bills. Because the necessary mutuality of obligation as to the subject matter of the agreement between the parties is lacking, the Office of the Attorney General is of the opinion that the Christian Brotherhood Network does not provide "insurance" as that term is defined by LSA-R.S. 22:5(1)(a).
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ JUDY COCKERHAM ASSISTANT ATTORNEY GENERAL
Date Received: Date Released:
JUDY COCKERHAM ASSISTANT ATTORNEY GENERAL